**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

CIVIL CASE NO.: 3:17-cv-00017-CVG-RM

CATALUS CAPITAL USVI,
LLC, a U.S. Virgin Islands limited liability
company, and VVS, LLC, a U.S. Virgin Islands
limited liability company,

      Plaintiffs,

v.

THE SERVICEMASTER COMPANY, LLC,
a Delaware limited liability company,
THE TERMINIX INTERNATIONAL
COMPANY, LP, a Delaware limited partnership,
and TERMINIX INTERNATIONAL USVI, LLC
a U.S. Virgin Islands limited liability company,

      Defendants.

_____/

          **JURY TRIAL DEMANDED**

**AMENDED COMPLAINT**

      CATALUS CAPITAL USVI, LLC and VVS, LLC collectively ("***Plaintiffs***"), by and

through their undersigned counsel, bring suit against THE SERVICEMASTER COMPANY, LLC,

THE TERMINIX INTERNATIONAL COMPANY, LP, and TERMINIX INTERNATIONAL

USVI, LLC, collectively ("***Defendants***"), and allege as follows:

**NATURE OF THE CASE**

      1.    This is an action for damages to business and property under the federal Racketeer

Influenced and Corrupt Organizations Act ("***RICO***"), 18 U.S.C. § 1961 *et seq*., and the laws of the

U.S. Virgin Islands ("***Virgin Islands***") arising from the illegal use of methyl bromide at the

Sirenusa Luxury Residences ("***Sirenusa***") on the island of St. John, Virgin Islands, as well as other locations in the Virgin Islands.

2.      Plaintiffs own and rent out villas located within Sirenusa.  Defendants, operating as interrelated entities, provide pest control and fumigation services for homes and businesses including in the Virgin Islands.  In particular, Defendants provided residential fumigation services at Sirenusa and utilized a highly toxic pesticide containing methyl bromide.  Because of its extreme toxicity, the use of methyl bromide is restricted and its application in residential structures such as Sirenusa is prohibited by law.

3.      Despite this well-documented prohibition, The Terminix International Company LP and Terminix International USVI, LLC joined with two other Puerto Rican entities to form an enterprise, as alleged in detail below, to illegally obtain and use methyl bromide at Sirenusa and in other residential fumigations elsewhere in the Virgin Islands multiple times over the course of at least two years. The ServiceMaster Company, LLC, through its comprehensive business support and knowledge of The Terminix International Company LP and Terminix International USVI, LLC's business operations, knowingly and willfully agreed and/or encouraged or enabled their participation in said enterprise.   The Terminix International Company LP and Terminix International USVI, LLC participated through the use of misrepresentation, deception, subterfuge, and fraudulent documentation as alleged in greater detail below.  This culminated in the high-profile poisoning of a Delaware family.   This misrepresentation, deception, subterfuge, and the damages caused therefrom is known and referred to as the "Sirenusa poisoning."

4.      Due to the Defendants' criminal use of methyl bromide and participation in the enterprise, Plaintiffs have sustained significant economic losses as alleged in greater detail below.

Plaintiffs are entitled to compensatory damages, trebled, as well as, special, and punitive damages because of the outrageous and extreme nature of Defendants' unlawful conduct contrary to its numerous representations that its conduct is compliant with the highest standards of professionalism and the law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 18 U.S.C. § 1964 (RICO), and 28 U.S.C. § 1367 (supplemental jurisdiction), conferring jurisdiction over territorial law claims that are so related to Plaintiffs' federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Defendants are subject to personal jurisdiction in the District of the Virgin Islands pursuant to 5 V.I.C. §§ 4903(a)(3) and (a)(4) because Terminix International USVI, LLC is a resident of this District and Defendants The Terminix International Company LP and The ServiceMaster Company, LLC have caused tortious injury in this District by acts committed both inside and outside this District.  Defendants The Terminix International Company LP and Terminix International USVI, LLC regularly solicit business in this District, and have engaged in a persistent course of conduct in this District. Additionally, Defendant The ServiceMaster Company, LLC is subject to personal jurisdiction pursuant to 18 U.S.C. § 1965(b).[1]

---

[1] In addition to the statutory bases for the exercise of personal jurisdiction over The Terminix International Company LP, Terminix International USVI, LLC, and The ServiceMaster Company, LLC, the Court previously ruled, "the Terminix defendants have waived their personal jurisdiction defense" by failing to raise the defense in their first Rule 12 motion.  [D.E. 59, pg. 3].

7.      Venue for this action is proper in this District pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a) because a significant portion of the Defendants' unlawful activities have occurred in this District and Defendant Terminix International USVI, LLC resides in this District.   In addition, there is no other venue that is appropriate as to all Defendants.

## THE PARTIES

8.      Catalus Capital USVI, LLC ("*Catalus*") is a Virgin Islands limited liability company.  At the time of the Sirenusa poisoning, Catalus owned twelve (12) villas located within Sirenusa—specifically, Building A, Lower Villa known as Pisa; Building C, Upper and Lower Villas known as Sorrento and Palermo; Building E, Lower Villa known as Milan; Building F, Upper and Lower Villas known as Verona and Siena; Building G, Upper and Lower Villas known as Padua and Sanremo; Building H, Upper Villa, known as Lucca; Building I, Upper and Lower Villas known as Venezia and Firenze; and Building J, Lower Villa known as Positano, 11 Enighed, St. John, Virgin Islands 00830.

9.      VVS, LLC ("*VVS*") is a Virgin Islands limited liability company.  At the time of the Sirenusa poisoning, VVS owned four (4) villas located within Sirenusa—specifically, Building D, Upper Villa, known as Maranello; Building D, Lower Villa, known as Modena; building K, Upper Villa known as Monza; and Building K, Lower Villa known as Imola, 11 Enighed, St. John, Virgin Islands 00830.

10.     The ServiceMaster Company, LLC ("*ServiceMaster*") is a Delaware limited liability company with its principal place of business located at 860 Ridge Lake Boulevard, Memphis, Tennessee 38120. ServiceMaster provides comprehensive business support to The Terminix International Company LP's retail branches, including Terminix International USVI, LLC.  ServiceMaster's business support includes, among other things, providing standardized

documents and policies for new employees, which include, but are not limited to, job applications; consent forms for prospective employee background checks and motor vehicle records (if applicable to a position requiring the use of a motor vehicle); IRS tax withholding forms; employee benefit plan documents (*e.g.,* participating in company health insurance and life insurance programs); employee handbooks; and employee salary direct deposit election documents.

11.     In addition, ServiceMaster's Treasury and Finance departments provide financial business support to The Terminix International Company LP branches, including Terminix International USVI, LLC, by "sweeping" bank accounts after which ServiceMaster deposits the proceeds from these sweeps directly into an account owned by The Terminix International Company LP.   ServiceMaster also provides other business support such as human resources, marketing, information technology, communications, legal, and accounting to The Terminix International Company LP branches, including Terminix International USVI, LLC.   In exchange for the business support ServiceMaster provides, The Terminix International Company, LP and Terminix International USVI, LLC each share a portion of the costs with ServiceMaster. Moreover, ServiceMaster is the sole parent of ServiceMaster International Holdings, Inc., which is the sole member and manager of Terminix International USVI, LLC.  In addition, ServiceMaster directly owns Terminix International, Inc. and directly owns, operates, or controls ServiceMaster Consumer Services, LP's business operations.   And, several officers of ServiceMaster have served as officers of Terminix International USVI, LLC—namely, Mark Peterson, Theodore A. Schultz, D. Shannon Sparks, James E. Shields, and Thomas Campbell.

12.     The Terminix International Company, LP ("***Terminix***") is a Delaware limited partnership with its principal place of business located at 860 Ridge Lake Boulevard, Memphis,

Tennessee 38120.  Terminix is a wholly-owned subsidiary of ServiceMaster.  Terminix also provides residential and commercial pest control services throughout the United States and the Virgin Islands.  In addition, Terminix operates the website www.terminix.com, which provides marketing and information for Terminix customers in the United States as well as in the Virgin Islands.  Terminix also operates a toll-free customer service line, 1-800-TERMINIX, for customers in the United States and in the Virgin Islands. Terminix performs its business operations, including operating the website www.terminix.com and the toll-free customer service line, 1-800-TERMINIX, with the comprehensive business support provided by ServiceMaster.

13.     Terminix International USVI, LLC ("***Terminix USVI***") is a Virgin Islands limited liability company with its principal place of business located at 6300 Estate Peter's Rest, Suite 1, Christiansted, St. Croix, Virgin Islands.  Terminix USVI provides residential and commercial pest control and fumigation services on St. Thomas, St. Croix, and St. John, Virgin Islands.  Terminix USVI operates as an agent for Terminix in the Virgin Islands and its managers directly report to Terminix.  In addition to being its agent, Terminix USVI did business as "Terminix" in the Virgin Islands and owned the website www.terminixusvi.com.  Terminix USVI performs its business operations with the comprehensive business support provided by ServiceMaster.

14.     Plaintiffs collectively refer to ServiceMaster, Terminix, and Terminix USVI  herein as Defendants due to their interrelated business operations as alleged above. Defendants' corporate relationships are as follows: (a) ServiceMaster is the sole parent of ServiceMaster International Holdings, Inc., which is the sole member and manager of Terminix USVI; (b) Terminix is a wholly-owned subsidiary of ServiceMaster, which oversees and manages Terminix's business operations through a general partner, Terminix International, Inc., and a limited partner,

ServiceMaster Consumer Services, LP; and (c) Terminix USVI, while owned and managed by ServiceMaster International Holdings, Inc., is an agent for Terminix in the Virgin Islands. Together, Defendants are indirectly and directly held by ServiceMaster Global Holdings, Inc., a publicly traded corporation.

## COMMON FACTUAL ALLEGATIONS

### I.        Methyl Bromide

15.        Methyl bromide is an odorless, colorless gas used to control a wide variety of pests in agriculture and shipping, including fungi, weeds, insects, nematodes (or roundworms), and rodents.  Methyl bromide is a highly toxic substance. Because it dissipates rapidly into the atmosphere, it is most dangerous at the fumigation site and areas in close proximity to the fumigation site.

16.        Methyl bromide is classified as a Restricted Use Pesticide ("***RUP***") by the United States Environmental Protection Agency ("***EPA***").  As such, methyl bromide and other RUPs are not available for purchase or use by the general public.  The EPA restricts the use of RUPs and RUP byproducts because they have deleterious effects on the environment and can cause significant injury to humans.

17.        RUPs can only be used by certified applicators or individuals under the direct supervision of a certified applicator.  Applicators of RUPs such as those containing methyl bromide require specialized training before purchasing pesticides and need to thoroughly understand and comply with the specific instructions and restrictions on the label to ensure that the pesticide is used safely and effectively.

18.        Applying methyl bromide products in residential structures is dangerous and violates federal and Virgin Islands law.  The EPA banned indoor use of methyl bromide and

*Catalus Capital USVI, LLC, et al. v. The Terminix International Co., LP, et al.*
*Case No. 3:17-cv-00017-CVG-RM*

products containing methyl bromide in 1984 and, due to its deleterious effects on the stratospheric ozone layer, the United States began to phase out the use of methyl bromide on January 1, 2005. The only exceptions to this phase-out are certain critical uses of methyl bromide—*e.g.*, fumigant for commercial shipping, quarantine, and agriculture—none of which are applicable here.

19.     METH-O-GAS Q, Methyl Bromide Quarantine Fumigant, EPA Reg. No. 8536-29-87994 ("***MBQ***"), and METH-O-GAS 100, Methyl Bromide Quarantine Fumigant, EPA Reg. No. 8536-15-87994 ("***MB100***"), are all products that contain 100% methyl bromide and were used by Defendants to fumigate in the Virgin Islands, including at Sirenusa where Defendants illegally applied MBQ. The approved labels for these products clearly and boldly state that the product is a "RESTRICTED USE PESTICIDE," as well as a "COMMODITY" or "QUARANTINE" fumigant and/or "FOR  QUARANTINE/ REGULATORY USE  ONLY."  These approved labels also indicate that it is a violation of federal law to use the product in a manner inconsistent with its labeling, which includes using the product in residential areas.

20.     The health effects of exposure to methyl bromide are serious and, in some instances, can be fatal. In severe cases, exposure can cause central nervous system and respiratory system damage.  Symptoms following exposure may involve a latent period of several hours, followed by signs such as nausea, abdominal pain, weakness, confusion, pulmonary edema, and seizures. Individuals who survive the acute phase often require a prolonged convalescence. Persistent neurological deficits such as cognitive impairment and optical atrophy are frequently present after moderate to severe poisoning.

## II.      The Virgin Islands Enterprise

21.     From as early as September 2012 until in or about June 2015, Terminix and Terminix USVI associated in fact with two other entities known as Superior-Angran, LLC f/k/a Superior-Angran, Inc. and Superior-Angran Caribe, Inc. a/k/a Superior-Angran Caribbean, Inc., collectively ("***Superior-Angran***"), to form an enterprise, herein referred to as the ("***Virgin Islands Enterprise***"), with the common purpose of illegally importing and using prohibited methyl bromide for residential fumigation services in the Virgin Islands and perpetrating a scheme to defraud for economic gain from that use.  Terminix and Terminix USVI conducted the affairs of the Virgin Islands Enterprise through a pattern of racketeering activity as herein alleged with the business support and to the benefit of ServiceMaster.  Defendants also knowingly agreed and conspired among themselves to conduct the affairs of the Virgin Islands Enterprise through a pattern of racketeering activity as herein alleged.

22.     The Superior-Angran companies are two entities in Puerto Rico that are and have been engaged in the sale and distribution of pesticides and agricultural products from a facility located at Carretera 19, Km., 0.3, Bo Monacillo, Guaynabo, Puerto Rico 00971.

23.     Among the pesticides Superior-Angran sells and distributes are MBQ and MB100, as alleged above.

24.     Under the Clean Air Act, codified at 42 U.S.C. § 7401, *et seq.*, pesticide applicators purchasing methyl bromide for quarantine and pre-shipment application must certify to the seller that they will use the methyl bromide solely for quarantine and pre-shipment applications.  The purchasing applicator is required to provide this certification to the seller.  Then, on a quarterly basis, the Clean Air Act requires the sellers of methyl bromide to file a report with the EPA

specifying the total quantities of methyl bromide delivered domestically for quarantine and pre-shipment applications.

25.     The EPA determined that between April 8, 2013 and April 14, 2015, Superior-Angran, LLC failed to certify that the methyl bromide it sold would be used only for quarantine and pre-shipment applications, in violation of the Clean Air Act.  And, in further violation of the Clean Air Act, between January 2, 2013 and June 15, 2015, Superior-Angran, LLC, on one hundred and six (106) separate occasions, sold MBQ and MB100 to applicators in Puerto Rico and the Virgin Islands, including Terminix USVI and its predecessor entity, Bugbusters, Inc., and failed to obtain the requisite certification that the MBQ and MB100 would only be used in quarantine and pre-shipment applications and therefore not in prohibited residential use.

26.     Under the Clean Air Act, Superior-Angran was under a duty not to sell methyl bromide to Terminix USVI because Terminix USVI, while acting as an agent for Terminix and with the business support of ServiceMaster, did not provide a true and accurate certification of proposed use to Superior-Angran.  Additionally, had Terminix USVI provided a true and accurate certification to Superior-Angran and had Superior-Angran reported Terminix USVI's proposed use of methyl bromide in residential fumigations to the EPA, Terminix USVI would not have been able to purchase methyl bromide or use methyl bromide in residential fumigations.

27.     At all times relevant hereto, Terminix USVI employees Jose Rivera ("***Rivera***"), branch manager for St. Croix and St. Thomas Terminix USVI locations, and Joan Vasquez ("***Vasquez***"), pest control technician for Terminix USVI, were "certified applicators" under the Federal Insecticide, Fungicide, and Rodenticide Act ("***FIFRA***"), 7 U.S.C. §§ 136(e)(1),

136(e)(3)(1), and were or should have been aware of their obligations and prohibitions under the FIFRA concerning the purchase, importation, and use of methyl bromide into the Virgin Islands.

28.     Together, Terminix, Terminix USVI, and Superior-Angran participated in a scheme to defraud Plaintiffs through Plaintiffs' property manager and agent, Sea Glass Vacations, LLC ("**Sea Glass**"), and made additional false representations via the mail, interstate wires and for the purpose of economic gain through the illegal use of methyl bromide in residential fumigation services.

### III.     The Sirenusa Poisoning

29.     Sirenusa is a 22-villa luxury condominium community located at the top of a five-acre property on St. John.  With a vision to create the ultimate vacation destination, Plaintiffs invested many millions of dollars in acquiring the villas and maintaining them at very exacting standards.  The villas comprising Sirenusa are exceptional private residences tailored to meet the needs of tourists, complete with breathtaking views of Cruz Bay and the surrounding landscape, outstanding Italian-inspired architectural designs, and ultra-luxurious appointments.

30.     In addition to the many millions of dollars invested to acquire the villas, Plaintiffs committed a significant amount of time and resources to market the resort, villas they owned, and build the Sirenusa brand.

31.     Because of its prime location, privacy, and its high-end amenities, Sirenusa was highly regarded and became a very popular destination for tourists worldwide.

32.     On or about March 18, 2015, the Esmond family from Delaware, was vacationing at Sirenusa. Terminix and Terminix USVI, participating in the conduct of the Virgin Islands Enterprise's affairs, used methyl bromide to illegally fumigate the villa below the one where the Esmond family was staying.  This action was done in furtherance of a scheme to defraud, was

illegal, prohibited and was done with reckless disregard for when, where, and how methyl bromide may be lawfully used.  As a result, the Esmonds were exposed to high levels of methyl bromide and began to exhibit symptoms of severe poisoning.  Steve Esmond and his two teenage sons were airlifted to a Philadelphia hospital with symptoms including generalized weakness, severe myoclonus (muscle jerks), fasciculation (muscle twitches), altered sensorium (altered senses), as well as speech and vocabulary difficulties. The three Esmond family members required endotracheal intubation and mechanical ventilation. The two teenage boys were put into medically induced comas for weeks.  Six months later, the boys still struggled to eat, walk and sit up on their own. The father still suffered from severe tremors, had difficulty speaking, and could not turn the pages of a book.

33.     Sirenusa received widespread media coverage documenting the Sirenusa poisoning, and documenting the Terminix and Terminix USVI's misrepresentations and participation in the conduct of the Virgin Islands Enterprise's affairs.  Even His Holiness Pope Francis visited the Esmond family during his trip to the United States in 2015.  *See, e.g.,* ABC NEWS, *Poisoned in Paradise: A Look at the Pesticide Methyl Bromide*; NBC NEWS, *Methyl Bromide Pesticide in Paradise Poisoning Case Still Used in U.S. Crops*; NBC NEWS, *Toxic Substance Used Before at Virgin Islands Complex Where Family Fell Ill*; CBS NEWS, *Three Remain Hospitalized After Family Vacation Poisoning*; USA TODAY, *Delaware family poisoned in Caribbean condo*; CNN, *Delaware Boys Critical After Resort Illness*; CNN.COM, *New Details on Family Poisoned by Pesticide: Sons Can't Eat or Walk Alone*; PEOPLE MAGAZINE (CELEBRITY EDITION), *Family of 4 'Fighting for Everything Right Now' After Being Reportedly Poisoned at St. John Resort Sirenusa*; THE VIRGIN ISLANDS CONSORTIUM, *Six Weeks After Sirenusa Poisoning,*

*Two Delaware Teens Remain in Critical Condition*; NEWS OF ST. JOHN, *What We Know About Sirenusa*; NEW YORK DAILY NEWS, *Delaware Family Poisoned By Pesticide On Virgin Islands Vacation Will Likely Never Recover: Officials*; THE GUARDIAN, *Delaware Family Falls Ill From Pesticide Poisoning At Virgin Islands Resort*; USA TODAY, *Poisoned Delaware Family Blessed by Pope Sunday*; UK DAILY MAIL.COM, *Pope Holds Secret Meeting With Delaware Family Who Are Still Paralyzed Six Months After Being Poisoned By Pesticide On Caribbean Vacation*.

34.     Terminix and Terminix USVI's participation in the conduct of the Virgin Islands Enterprise's affairs, with the business support of ServiceMaster, culminated in the Sirenusa poisoning and has caused Plaintiffs to suffer significant economic losses.  These losses include, but are not limited to: diminished property values; reservation cancellations and deposit refunds; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the decline of villa sales.

## IV.     The Hiring of Terminix USVI and the Defendants' Illegal Use of Methyl Bromide at Sirenusa and in the Virgin Islands in Furtherance of the Virgin Islands Enterprise

35.     On or about October 2013 Sea Glass began providing property management and other services to Catalus as its agent.  Shortly thereafter, Sea Glass began providing property management and other services to VVS as its agent.  As part of the services it provided to Catalus and VVS, as set forth below, Sea Glass retained Terminix USVI to perform monthly pest control services for all villas at Sirenusa, including the villas owned by Catalus and VVS.  The funds paid to Terminix USVI by Sea Glass for services at the villas owned by Catalus and VVS directly belonged to Catalus and VVS, respectively.

36.     Through its principal, David Adams ("**Adams**"), Sea Glass engaged Terminix USVI in 2013 to perform services at Sirenusa based upon Terminix USVI's widespread presence in the Virgin Islands and relied upon the reputation and representations of Terminix being a leading pest control provider with experienced, licensed, properly trained, and insured professionals.  In doing so, Sea Glass relied on Terminix and Terminix USVI to provide pest control and any necessary fumigation services in compliance with all applicable laws and regulations.  Sea Glass, through Adams, never thought that the services provided by Terminix USVI would be anything other than legal and in compliance with applicable laws.

37.     In September 2014, Sea Glass employees noticed that there was evidence of a pest infestation in several of the villas at Sirenusa.  Thomas J. McGrath ("**McGrath**"), who was a sales representative and field inspector for Terminix USVI, recommended a treatment to inject certain infested areas with pesticide because of the presence of "powder post beetles."  However, this recommended injection treatment was not successful.  During September 2014, McGrath then recommended to Adams that the villas be fumigated using a gas that would be released in the infested areas.  Upon this recommendation, Sea Glass and Terminix USVI executed two service agreements.  *See* **Composite Exhibit "A"**, Residential Pest Control One-Time Service Agreements.[2]  At no time did McGrath or anyone else affiliated with Terminix USVI inform Adams or anyone else at Sea Glass, orally or in writing, what fumigant would be used for the recommended fumigation. Further, at no time did McGrath or anyone else affiliated with Terminix USVI inform Adams or anyone else at Sea Glass, orally or in writing, that methyl bromide would

---

[2] The "confidential" designation by Defendants in this and other exhibits to the Amended Compliant has been withdrawn.

be used for the fumigation or that it was illegal to use methyl bromide in residential property. Had McGrath or anyone else affiliated with Terminix USVI informed Adams or anyone else at Sea Glass, orally or in writing, that an illegal fumigant was going to be used, Sea Glass would have refused to allow Terminix USVI to use that fumigant at Sirenusa.

38.     Terminix and Terminix USVI, through McGrath, Rivera, and Vasquez, participated in the conduct of the Virgin Islands Enterprise's affairs with the business support of ServiceMaster by, deceptively misrepresenting their fumigation services to Plaintiffs through Plaintiffs' agent, Sea Glass, and its representatives Adams and Felix Collazo ("***Collazo***"), by: (1) failing to disclose that pesticides containing methyl bromide, a prohibited fumigant for residential areas, were going to be used for the fumigations performed at Sirenusa; (2) misrepresenting that they were acting "in strict accordance with label directions" and failing to disclose that their use of methyl bromide for the fumigations performed at Sirenusa was illegal, prohibited for residential use and not according to the label; (3) failing to disclose that methyl bromide is acutely toxic; (4) misrepresenting that they fumigate using "state of the art techniques and modern equipment" when, in fact, they did not use even the basic equipment needed to provide fumigation services safely; and (5) misrepresenting that their products were environmentally friendly and failing to disclose methyl bromide's deleterious effects on the environment and that its use was prohibited in residential areas on their local and national websites terminixusvi.com and terminix.com. These deceptive practices gave Plaintiffs' agent dangerously false and misleading impressions that Defendants' fumigation services were legal and safe as it had no knowledge or reason to know of the prohibited uses of the fumigant that would be used or the hazardous effects resulting from human exposure to that fumigant.

39.     Indeed, at all times relevant hereto, Defendants were aware or should have been aware of the restricted use of methyl bromide and products containing methyl bromide. Specifically, Defendants were aware or should have been aware that it was illegal and prohibited to use pesticides containing methyl bromide for residential fumigation services.

40.     Despite this restriction, Terminix USVI, while acting as an agent for Terminix and with the business support of ServiceMaster and in furtherance of their scheme, illegally used pesticides containing methyl bromide at Sirenusa on multiple occasions up to and including the date of the acute poisoning of the Esmond family.

41.     Specifically, Terminix USVI, while acting as an agent for Terminix and with the business support of ServiceMaster and in furtherance of their scheme, through deceptive acts, misrepresentations, and omissions induced Sea Glass to allow it to provide fumigation services at Sirenusa on October 1, 2014, October 6, 2014, and March 18, 2015, but unbeknownst to Sea Glass that illegal and prohibited methyl bromide would be used.  *See* **Composite Exhibit "B"**, Invoices from Terminix USVI to Sea Glass.  Moreover, Terminix USVI, while acting as an agent for Terminix and with the business support of ServiceMaster and in furtherance of their scheme, issued invoices and received payment for said illegal fumigation services at Sirenusa.[3]

42.     Terminix USVI, while acting as an agent for Terminix and with the business support of ServiceMaster, not only illegally used methyl bromide at Sirenusa but also did so in numerous residential properties throughout the Virgin Islands from September 2012 until March 2015, including the following locations:

---

[3] The invoice for the March 18, 2015 fumigation, which is dated March 24, 2015, was not paid.

| Applications of Methyl Bromide at Other Virgin Islands Locations | |
| --- | --- |
| **Date** | **Location** |
| September 7, 2012 | 56-58 Hill Street, St. Croix |
| November 13, 2012 | 336 Herman Hill, St. Croix |
| January 18, 2013 | Louis E. Brown Community Center, St. Croix |
| January 24, 2013 | 42 Villa Madeline, St. Croix |
| April 16, 2013 | 6 Southgate Condo, St. Croix |
| June 4, 2013 | 165 Estate Judith's Fancy, St. Croix |
| June 26, 2013 | 52 Cotton Valley, St. Croix |
| July 3, 2013 | 423 Carden Beach, St. Croix |
| September 6, 2013 | 97 Estate Judith's Fancy, St. Croix |
| January 15, 2014 | 24 Eliza's Retreat, St. Croix |
| February 24, 2014 | 52 Estate Cotton Valley, St. Croix |
| February 25, 2014 | 42 Estate Cotton Valley, St. Croix |
| February 9, 2015 | 16 Estate Solberg, St. Thomas |

43.     Each instance of Terminix and Terminix USVI's residential use of pesticides containing methyl bromide was in breach of federal and Virgin Islands law.

44.     After the Sirenusa poisoning, the United States Government ("***Government***") brought a federal criminal action against Terminix and Terminix USVI for their application of fumigants containing methyl bromide in residential structures, in violation of FIFRA.  Terminix and Terminix USVI entered into a plea agreement with the Government as to the charges in the

Information; however, the Court rejected the plea agreement, allowed Terminix and Terminix USVI to withdraw their previously entered guilty pleas, and ultimately granted the Government's motion to dismiss the Information without prejudice.

45.     On January 20, 2017, the Government filed another criminal Information against Terminix and Terminix USVI charging them with multiple violations of the FIFRA.  The Government and Terminix and Terminix USVI entered into another plea agreement whereby the Terminix defendants agreed to plead guilty to multiple criminal counts in open Court.  *See* **Composite Exhibit "C"**, Information and Plea Agreement, U.S. District Court of the Virgin Islands, Case No. 3:17-cr-00007-CVG-RM.

46.     On March 23, 2017, Terminix and Terminix USVI pled guilty to all four counts listed in the Information.  Following entry of the guilty pleas, on November 20, 2017, the Court sentenced Terminix and Terminix USVI to five years of probation, imposed fines totaling $9,200,000.00, awarded the EPA $1,242,449.80 in restitution, and required Terminix and Terminix USVI to "implement training for commercial pesticide applicators and the pesticide handling employees."

47.     In addition to the federal criminal action, the Government of the Virgin Islands conducted an investigation that uncovered evidence demonstrating Defendants' widespread, illegal and prohibited residential use of methyl bromide as well as Defendants' efforts to deceive the citizens of the Virgin Islands about their use of methyl bromide.  As a result of its investigation, the Government of the Virgin Islands filed a civil suit against Defendants alleging, among other things, violations of the Consumer Protection Law of 1973, 12A V.I.C. § 101, the Consumer Fraud and Deceptive Business Practices Act, 12A V.I.C. § 304; the Virgin Islands Criminally Influenced

and Corrupt Organizations Act, 14 V.I.C. § 605; and the Pesticide Control Act, 12 V.I.C. §§ 825, 827, and 843.  *See* **Exhibit "D"**, Virgin Islands' Verified Complaint against Defendants, Superior Court of the Virgin Islands, Case No. SX-16-CV-700.

48.     Superior-Angran, for their part, were also investigated by the EPA and, on August 18, 2016, entered into a Consent Agreement with the agency to pay a fine for multiple violations of the Clean Air Act as well as to provide professional training for pesticide applicators.  *See* **Exhibit "E"**, Consent Agreement and Final Order, EPA Region 2, Docket No. CAA-02-2016-1204.

49.     Terminix and Terminix USVI, engaged in these deceptive acts in the Virgin Islands from on or about September 2012 until on or about March 2015, when the Virgin Islands Department of Planning and Natural Resources issued a "Stop-Use Order," which, among other things, found that  Terminix USVI's residential use of methyl bromide was not approved and that it had failed to apply or properly store methyl bromide, as its labeling required, and ordered it to immediately stop using methyl bromide in the Virgin Islands.

50.     Terminix and Terminix USVI, with the business support of ServiceMaster and in furtherance of their unlawful actions directed to Plaintiffs and other consumers in the Virgin Islands, utilized their websites, www.terminix.com and www.terminiusvi.com, and other media outlets such as the online marketing website gotostcroix.com to perpetuate their deceptive acts through local advertisements.  In particular, Terminix and Terminix USVI failed to disclose on their local and national website advertisements that they conduct residential fumigations using methyl bromide in the Virgin Islands, that methyl bromide is acutely toxic to humans, that methyl

bromide has deleterious effects on the environment, and that using methyl bromide in residential property is illegal.

51.    Terminix described its "home fumigation ('tenting') process" as "a complete and effective treatment" but failed to state that it illegally used methyl bromide as a residential fumigant on the national website, www.terminix.com.

52.    At all material times hereto, Terminix and Terminix USVI, with the business support of ServiceMaster and in furtherance of their scheme, misrepresented on their local and/or national websites that they were "experienced" and/or "trained" pest control "professionals." Terminix and Terminix USVI also held themselves out to be "the leading pest control provider in the world." As evidenced by the Sirenusa poisoning, Terminix and Terminix USVI's statements were patently false.

53.    Specifically, despite functioning as the primary sales representative for the fumigation services Terminix USVI provided at Sirenusa in October 2014 and March 2015, McGrath was neither licensed nor certified to perform residential fumigations in the Virgin Islands. Yet, McGrath participated in the illegal application of methyl bromide at Sirenusa accompanied by and working with Terminix USVI branch manager, Rivera, and pest control technician, Vasquez.  This further illustrates the false nature of Terminix and Terminix USVI's statements as McGrath lacked the requisite training and certification to perform fumigations and/or apply methyl bromide in the first instance.

54.    Further, on or about March 2015, at www.terminixusvi.com and through the online marketing website www.gotostcroix.com, Terminix USVI, with the business support of ServiceMaster, falsely represented that its products were environmentally friendly: "Also, to help

protect our beautiful island, we use ecological [*sic*] sensitive products that revert to inert ingredients in a short period of time." The false nature of this statement is readily apparent insofar as the EPA restricted the use of methyl bromide, in part, because of its deleterious effects on the environment—namely, the ozone layer.

55.    Terminix USVI, while acting as an agent for Terminix, also failed to disclose that it was going to use methyl bromide for the work it performed at Sirenusa. The Residential Pest Control One-Time Service Agreements issued by McGrath on September 14, 2014 and October 2, 2014 as well as the invoices signed by Vazquez, on October 1, 2014 and October 6, 2014 and presented to Adams and Sea Glass employee, Collazo, misleadingly describe its treatment for powder post beetles only as "fumigation" while simultaneously omitting required details such as the pest control materials used, EPA Regulation numbers, amounts used, and certification numbers of the applicators.

56.    Most importantly, Terminix USVI, while acting as an agent for Terminix and with the business support of ServiceMaster, continued with its pattern of wrongful actions by failing to disclose that it intended to use methyl bromide for the fumigation performed at Sirenusa on March 18, 2015, which resulted in the poisoning of the Esmond family. In particular, the invoice issued by McGrath on March 24, 2015 did not describe the treatment for powder post beetles, and did not indicate the pest control material used, an EPA Regulation number, the amount used, or a certification number of the applicator as required. The invoice did not even contain Vazquez's signature unlike the previous ones issued by Terminix USVI to Sea Glass.

57.    Terminix USVI, through its employees, McGrath, Vazquez and Rivera, and while acting as agents for Terminix and with the business support of ServiceMaster and in furtherance

*Catalus Capital USVI, LLC, et al. v. The Terminix International Co., LP, et al.*
*Case No. 3:17-cv-00017-CVG-RM*

of their improper actions, admittedly failed to disclose at any material time hereto that its fumigation process using methyl bromide at Sirenusa was illegal and not in accordance with the approved label for pesticides containing methyl bromide.  Likewise, Terminix USVI failed to disclose the reason its use of methyl bromide was illegal given that the approved labels for pesticides containing methyl bromide clearly and boldly state and include warning such as: "DUE TO ACUTE TOXICITY," "DANGER," "POISON," and "extremely hazardous."  The label also warns that human exposure to high concentrations of methyl bromide can result in severe consequences, including paralysis, convulsions, coma, and even death.

58.     Terminix USVI, through its employees, McGrath, Rivera, and Vazquez, also failed to provide Adams or anyone else affiliated with Sea Glass with the label for methyl bromide prior to the fumigations performed at Sirenusa on October 1, 2014, October 6, 2014, and March 18, 2015.

59.     Terminix and Terminix USVI's material omissions and misrepresentations in furtherance of the scheme to defraud intentionally deceived Plaintiffs' agent into believing their fumigation services were legal and safe.

## COUNT I

**Violation of the Federal Racketeer Influenced and Corrupt Organizations Act
(18 U.S.C. §§ 1962(c) and 1964(c))**

**(Against Terminix and Terminix USVI)**

60.     Plaintiffs re-allege and incorporate each of the allegations set forth in Paragraphs 1 through 59 as though they are fully set forth herein.

61.     Each Plaintiff is a "person" as defined in section 1961(3) of RICO as they are entities capable of holding a legal or beneficial interest in property.

62.     Each Defendant is a "person" as defined in section 1961(3) of RICO as they are entities capable of holding a legal or beneficial interest in property.

63.     Terminix and Terminix USVI are a group of entities, who, along with Superior-Angran, associated in fact to form the Virgin Islands Enterprise.

64.     The Virgin Islands Enterprise engaged in and its activities affected interstate commerce as it conducted business and currency exchanges within the United States, Puerto Rico and the Virgin Islands.

65.     Terminix and Terminix USVI were associated with the Virgin Islands Enterprise from at least January 2013 through June 2015.

66.     Commencing in September 2012 and continuing through June 2015, Terminix and Terminix USVI conducted and/or participated in the conduct of the Virgin Islands Enterprise's affairs though a pattern of criminal racketeering activity.

67.     Terminix and Terminix USVI have engaged in the following pattern of repeated racketeering activity:

a.     <u>Wire Fraud in violation of 18 U.S.C. § 1343</u>: As set forth above in detail, Terminix and Terminix USVI devised a scheme to specifically and intentionally defraud Plaintiffs through their agent, Sea Glass, and obtain money by means of false pretenses, by committing acts of wire fraud through: (i) the electronic communication of false and misleading statements concerning their use of environmentally safe pesticides on their local and national websites, terminixusvi.com and terminix.com, and through the online marketing website www.gotostcroix.com; (ii) the electronic communication of false and misleading statements concerning their level of expertise and training in performing residential fumigation services on their national website, terminix.com; (iii) sending

*Catalus Capital USVI, LLC, et al. v. The Terminix International Co., LP, et al.*
*Case No. 3:17-cv-00017-CVG-RM*

invoices and/or agreements to Sea Glass representatives regarding residential fumigation services and intentionally and fraudulently omitting their illegal use of methyl bromide; and (iv) in other such particulars as the evidence may show.

b.      This scheme to defraud devised by Terminix and Terminix USVI has been furthered and executed by, among many other acts of wire fraud between 2012 and 2015, including the following uses of the interstate wires:

| Examples of Use of the Interstate Wires in Violation of 18 U.S.C. § 1343 | | |
|---|---|---|
| **Date** | **Description** | **From/To** |
| 9/15/2014 | Residential Pest Control One-Time Service Agreement for Extermination Services for Powder Post Beetles; Building H, Upper Villa, known as Lucca, Building I, Lower Villa, known as Firenze, & Building J, Lower Villa, known as Positano, referring to the treatment as "fumigation", but deceptively omitting the use of methyl bromide and failing to state that it was illegal to use that fumigant. | McGrath to Adams |
| 10/1/2014 | $7,200.00 Invoice for Extermination Services for Powder Post Beetles; Building H, Upper Villa, known as Lucca, Building I, Lower Villa, known as Firenze, & Building J, Upper Villa, known as Capri, referring to the treatment as "fumigation", but deceptively omitting the use of methyl bromide, failing to state that it was illegal to use that fumigant, and failing to provide other required information. | Vasquez to Collazo and/or Adams |

*Catalus Capital USVI, LLC, et al. v. The Terminix International Co., LP, et al.*
*Case No. 3:17-cv-00017-CVG-RM*

| 10/2/2014 | Residential Pest Control One-Time Service Agreement for Extermination Services for Powder Post Beetles; Building C, Upper and Lower Villas, known as Sorrento and Palermo, referring to the treatment as "fumigation", but deceptively omitting the use of methyl bromide and failing to state that it was illegal to use that fumigant. | McGrath to Adams |
|---|---|---|
| 10/6/2014 | $3,750.00 Invoice for Extermination Services for Powder Post Beetles; Building C-Upper & Lower Villas known as Sorrento and Palermo, referring to the treatment as "fumigation", but deceptively omitting the use of methyl bromide, failing to state that it was illegal to use that fumigant, and failing to provide and other required information. | Vasquez to Collazo and/or Adams |
| 3/24/2015 | $2,800.00 Invoice for Extermination Services for Powder Post Beetles; Building J- Lower Villa known as Positano, deceptively omitting the use of methyl bromide, and failing to state that it was illegal to use that fumigant, and failing to provide and other required information. | McGrath to Adams |
| From at least 2013 to 3/2015 | Falsely describing its "home fumigation ('tenting') process" as "a complete and effective treatment" and omitting that it used methyl bromide as a fumigant and that it was illegal to use that fumigant in residential properties.  As further explained in paragraph 51 above. | Represented by Terminix on www.terminix.com and viewed and relied upon. |
| From at least 2013 to 3/2015 | Fraudulently stating that Defendants staffed "experienced" and/or "trained" pest control "professionals" and holding themselves out to be "the leading pest control provider in the world."  As further explained in paragraph 52 and 53 above. | Represented by Terminix and Terminix USVI on www.terminix.com and www.terminixusvi.com and viewed and relied upon. |

| | | |
|---|---|---|
| From at least 2013 to 3/2015 | Fraudulently stating: "Also, to help protect our beautiful island, we use ecological [*sic*] sensitive products that revert to inert ingredients in a short period of time."  As further explained in paragraph 54 above. | Represented by Terminix USVI on www.gotostcroix.com and viewed and relied upon. |

Each of the agreement, invoice, and website statements detailed above reflect Terminix and Terminix USVI's scheme to intentionally defraud Plaintiffs and obtain money by false pretenses inasmuch as they induced Sea Glass's representatives to rely on their false and misleading statements coupled with multiple requests for payment by check or automated clearing house to be sent from Sea Glass's and/or Plaintiffs' banking institutions to Terminix USVI.  Each use of the interstate wires in furtherance of and to execute the scheme to defraud constitutes a separate wire fraud offense and is an act of racketeering activity pursuant to 18 U.S.C. § 1961(1).

c.      <u>Mail Fraud, in violation of 18 U.S.C. § 1341</u>:  As set forth above in detail, Terminix and Terminix USVI devised a scheme to intentionally defraud Plaintiffs through their agent, Sea Glass, of monies related to their illegal residential fumigation services using methyl bromide.  For the purpose of furthering and executing this scheme to defraud, Terminix and Terminix USVI deposited, caused to be deposited, or otherwise committed overt acts specifically designed to cause others to deposit matters or things to be delivered by mail or private or commercial interstate carriers—namely, invoices for illegal fumigation services using methyl bromide as alleged above.

d.      This fraudulent scheme has been furthered and executed by many other acts of mail fraud.  Each use by Terminix and Terminix USVI of the United States mails, in furtherance of and to execute the scheme, constitutes a separate mail fraud offense and is thus an act of racketeering pursuant to 18 U.S.C. § 1961(1).

68.     All of the Terminix and Terminix USVI's predicate acts of racketeering set forth herein were so related as to establish a pattern of racketeering activity as that term is defined in section 1961(5) of RICO, as they had the same or similar purposes—*i.e.*, to defraud Plaintiffs through their agent, and to convert, steal and divert Plaintiffs' money to their own and with ServiceMaster's business support, benefit, and use.   They also involved the same or similar participants and methods of commission and had similar results, impacting the same or similar victims, namely Plaintiffs.

69.     All of Terminix and Terminix USVI's predicate acts of racketeering set forth herein were so continuous so as to form a pattern of racketeering activity in that: (a) Terminix and Terminix USVI engaged in the predicate acts over at least a two-year period starting in September 2012; and (b) the conduct became the Terminix and Terminix USVI's and the Virgin Islands Enterprise's regular way of conducting business to the extent they knowingly failed to provide proper certification of their intended use for the methyl bromide purchased from Superior-Angran, illegally used methyl bromide in residential fumigations, and misrepresented and/or omitted the hazardous and illegal nature of its fumigation services to Plaintiffs.

70.     As a direct and proximate result of Terminix and Terminix USVI's violations of section 1962(c) of RICO, Plaintiffs have suffered damages to their business and property as described herein. Indeed, Terminix and Terminix USVI carried out their scheme knowing that Sea Glass did not own the villas it managed at Sirenusa and that they were ultimately providing fumigation services for the owners of said villas, namely Plaintiffs.

71.     Plaintiffs are entitled to judgment in their favor finding Terminix and Terminix USVI jointly and severally liable for engaging in a pattern of racketeering activity in violation of

18 U.S.C. § 1692(c).  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are also entitled to treble damages, which include but are not limited to losses attributable to: diminished property values; reservation deposit refunds and cancellations; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the slowed pace of villa sales; as well as their attorney's fees and costs.

## COUNT II

**Violation of the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(d) and 1964(c)) – RICO Conspiracy**

**(Against All Defendants)**

72.    Plaintiffs re-allege and incorporate each of the allegations set forth in Paragraphs 1 through 59 as though fully set forth herein and in particular the substantive RICO allegations in Count I.

73.    Defendants have knowingly and willfully agreed and conspired among themselves and with Superior-Angran to violate 18 U.S.C. § 1962(c), by engaging in the pattern of racketeering activity set forth herein, in violation of 18 U.S.C. § 1962(d).

74.    ServiceMaster through its provision of comprehensive business support to Terminix and Terminix USVI, including human resources, marketing, information technology, communications, legal, financial and accounting services, knowingly and willfully agreed and/or encouraged or enabled Terminix and Terminix USVI's participation with Superior-Angran to violate 18 U.S.C. § 1962(c), by engaging in the pattern of racketeering activity set forth herein, in violation of 18 U.S.C. § 1962(d).

75.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiffs have suffered damages, including but not limited to losses attributable to: diminished

property values; reservation deposit refunds and cancellations; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the decline of villa sales.

76.     Plaintiffs are entitled to judgment in their favor finding Defendants jointly and severally liable for conspiring to engage in a pattern of racketeering activity in violation of 18 U.S.C. § 1692(d).  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are also entitled to treble damages, which include but are not limited to the damages described above, as well as their attorney's fees and costs.

## COUNT III

### Violations of the Virgin Islands Consumer Protection Law of 1973
### (12A V.I.C. § 101)

### (Against Terminix and Terminix USVI)

77.     Plaintiffs re-allege and incorporate each of the allegations contained in paragraphs 1 through 59 and 67(b) as though they are fully set forth herein.

78.     At all times material hereto, Terminix and Terminix USVI, engaged in deceptive trade practices supported and enabled by ServiceMaster in connection with the sale or offering for sale of fumigation services for Plaintiffs' villas by making false or misleading statements or representations which had the effect of deceiving or misleading Plaintiffs' agent, including but not limited to:  representations that Terminix and Terminix USVI's services had approval, characteristics, uses, or benefits that they, in fact, do not have; their services were of a particular standard, quality, or style, when they were of another (12A V.I.C. § 102(a)(l)); utilizing oral or written representations, or exaggerations, innuendo, or ambiguity as to a material fact or failure to

state a material fact deceiving or tending to deceive Plaintiffs' agent (12A V.I.C. § 102(a)(2));
and/or offering services intending not to sell them as offered (12A V.I.C. § 102(a)(3)) in violation
of 12A V.I.C. § 101, by engaging in the practices alleged herein, including, but not limited to,
repeatedly, directly or indirectly, expressly or by implication, and in numerous instances and/or on
a continuing basis:

a.      failing to disclose to Plaintiffs' agent that they were fumigant they were
using was illegal for fumigation in residential property;

b.      failing to disclose to Plaintiffs' agent that they were fumigating using
methyl bromide;

c.      failing to disclose that their use of methyl bromide was illegal and not
according to the label;

d.      failing to disclose that methyl bromide is acutely toxic; and

e.      misrepresenting that their services were provided by "experienced" and/or
"trained" pest control "professionals" and holding themselves out to be "the leading pest
control provider in the world;"

f.      misrepresenting that their products were environmentally friendly and
failed to disclose that methyl bromide has deleterious effects on the ozone layer; and

g.      in such other particulars as the evidence may show.

76.     Terminix and Terminix USVI's deceptive practices sent the false and misleading
impression to Plaintiffs' agent that their fumigation services were legal and safe.

77.     Plaintiffs are "consumers" under the Virgin Islands Consumer Protection Law of
1973 as Sea Glass, engaged Terminix and Terminix USVI with Plaintiffs' express authorization

and remitted payment to Terminix USVI and Terminix directly from Plaintiffs' business and escrow accounts.

78.     Plaintiffs are entitled to judgment in their favor finding Terminix and Terminix USVI jointly and severally liable for engaging in unfair and deceptive trade practices in violation of 12A V.I.C. § 101.  Pursuant to 12A V.I.C. § 108(b) and (g), Plaintiffs are also entitled to their actual damages, which include but are not limited to losses attributable to: diminished property values; reservation deposit refunds and cancellations; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the decline of villa sales; as well as their attorney's fees and costs sustained as a direct and proximate result of Terminix and Terminix USVI's unfair and deceptive trade practices.

## COUNT IV

### Negligence

### (Against All Defendants)

79.     Plaintiffs re-allege and incorporate each of the allegations contained in paragraphs 1 through 59, as though they are fully set forth herein.

80.     Terminix USVI, while acting as an agent for Terminix and to the benefit of ServiceMaster, owed Plaintiffs a duty to exercise reasonable care in providing pest control services at Sirenusa.  And, because they controlled, managed, supported, enabled, and/or benefitted from Terminix USVI's business operations, Terminix and ServiceMaster owed Plaintiffs a duty to exercise reasonable care in providing pest control services at Sirenusa.

81.     Defendants breached their duty to Plaintiffs by acting unreasonably through their reckless and illegal use of methyl bromide to fumigate villas at Sirenusa.

82.     Defendants' breach directly and proximately caused, and continues to cause, Plaintiffs to suffer significant economic damages to their respective businesses and properties.

83.     Plaintiffs' damages include, but are not limited to losses attributable to: diminished property values; reservation deposit refunds and cancellations; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the decline of villa sales.

84.     Plaintiffs are entitled to judgment in their favor finding Defendants jointly and severally liable to Plaintiffs for damages suffered as a result of Defendants' negligence and awarding Plaintiffs adequate compensation in an amount to be determined by a trier of fact.

## COUNT V

### Gross Negligence

### (Against All Defendants)

85.     Plaintiffs re-allege and incorporate each of the allegations contained in paragraphs 1 through 59, as though they are fully set forth herein.

86.     Terminix USVI, while acting as an agent for Terminix and to the benefit of ServiceMaster, owed Plaintiffs a duty to take reasonable care in providing pest control services at Sirenusa.   And, because they controlled, managed, supported, enabled, and/or benefitted from Terminix USVI's business operations, Terminix and ServiceMaster owed Plaintiffs a duty to exercise reasonable care in providing pest control services at Sirenusa as well.

87.     Defendants breached their duty to Plaintiffs through their reckless, continuous, illegal and wanton use of methyl bromide to fumigate villas at Sirenusa.

88.     Defendants' gross breach of their duty directly and proximately caused, and continues to cause, Plaintiffs to suffer significant economic damages to their respective businesses and properties.

89.     Plaintiffs' damages include, but are not limited to losses attributable to: diminished property values; reservation deposit refunds and cancellations; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the decline of villa sales.

90.     Plaintiffs are entitled to judgment in their favor finding Defendants jointly and severally liable to Plaintiffs for damages suffered as a result of Defendants' gross negligence and awarding Plaintiffs adequate compensation in an amount to be determined by a trier of fact, including punitive damages for Defendants' reckless and illegal conduct.

## COUNT VI

### Negligence *Per Se*

### (Against All Defendants)

91.     Plaintiffs re-allege and incorporate each of the allegations contained in paragraphs 1 through 59, as though they are fully set forth herein.

92.     Terminix USVI's decision, while acting as an agent for Terminix and to the benefit of ServiceMaster, to use of methyl bromide at Sirenusa violated the standard of care set forth in regulations promulgated by the EPA governing the use of RUPs, the FIFRA, the Clean Air Act, and the Virgin Islands Pesticide Control Act, among others.  And, because they controlled,

managed, supported, enabled, and/or benefitted from Terminix USVI's business operations, Terminix USVI's actions are imputed to Terminix and ServiceMaster.

93.     The standard of care set forth in the aforementioned regulations and laws apply to the benefit and protection of Plaintiffs.

94.     Terminix USVI's reckless, willful, and wanton indifference in failing to adhere to the standard of care set forth in the above-mentioned regulations and laws governing the use of methyl bromide constitutes negligence *per se* and is imputed to Terminix and ServiceMaster as well.

95.     Defendants' violation of these regulatory and statutory standards directly and proximately caused Plaintiffs to suffer significant economic losses, warranting compensatory and punitive damages.

96.     Plaintiffs' damages include, but are not limited to losses attributable to: diminished property values; reservation deposit refunds and cancellations; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the decline of villa sales.

97.     Plaintiffs are entitled to judgment in their favor finding Defendants jointly and severally liable to Plaintiffs for damages suffered as a result of Defendants' negligence *per se* and awarding Plaintiffs adequate compensation in an amount to be determined by a trier of fact, including punitive damages for Defendants' reckless and illegal conduct.

## COUNT VII

**Strict Liability for Abnormally Dangerous,
Ultra-Hazardous Activities**

**(Against All Defendants)**

98.     Plaintiffs re-allege and incorporate each of the allegations contained in paragraphs 1 through 59, as though they are fully set forth herein.

99.     Defendant Terminix USVI, while acting as an agent for Terminix and to the benefit of ServiceMaster, participated in and carried out pest control services at Sirenusa.  And, because they controlled, managed, supported, enabled, and/or benefitted from Terminix USVI's business operations, Terminix USVI's actions are imputed to Terminix and ServiceMaster.

100.     Defendants' pest control services were abnormally dangerous activities because, among other things:

      a.     they involved an activity that in and of itself is abnormally dangerous;

      b.     they involved the handling and application of a highly toxic substance that posed a high degree of risk of harm to humans even when properly used;

      c.     they involved the handling and application of a highly toxic substance that is precluded from use in residential structures, like the Sirenusa villas;

      d.     they resulted in the acute poisoning of the Esmond family, who continue to suffer from debilitating injuries; and

      e.     in such other particulars as the evidence may show.

100.     The risk associated with Defendants' use of methyl bromide required that such uses be carried on at their peril, rather than at the expense of the Plaintiffs who suffered significant harm as a result of Defendants' dangerous and reckless use of methyl bromide.

101.    Defendants' fumigation services using methyl bromide was inappropriate and illegal for residential structures and was uncommon for the area.

102.    Defendants' use of methyl bromide in their fumigation services was carried on for their own pecuniary gain and resulted in an unusual and unforeseeable risk to Plaintiffs.

103.    The magnitude of the risk of Defendants' inappropriate and illegal use of methyl bromide created an abnormal, ultra-hazardous risk of harm to Plaintiffs and their clientele.

104.    As a direct and proximate cause of the Defendants' use of methyl bromide, Plaintiffs have suffered significant economic losses, warranting compensatory and punitive damages.

105.    Plaintiffs' damages include, but are not limited to losses attributable to: diminished property values; reservation deposit refunds and cancellations; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the decline of villa sales.

106.    Plaintiffs are entitled to judgment in their favor finding Defendants strictly liable, jointly and severally, to Plaintiffs for damages, including punitive damages, resulting from their abnormally dangerous and/or ultra-hazardous activities.

## COUNT VIII

### Private Nuisance
### (28 V.I.C. § 331)

### (Against All Defendants)

107.    Plaintiffs re-allege and incorporate each of the allegations contained in paragraphs 1 through 59, as though they are fully set forth herein.

108.    Plaintiffs have, among other legitimate interests, an interest in utilizing their properties to obtain tourists and other patrons for their businesses engaged in brokering, leasing, and selling Sirenusa villas.

109.    Terminix USVI's illegal use of methyl bromide, while acting as an agent for Terminix and to the benefit of ServiceMaster, resulted in the contamination of several Sirenusa villas. And, because they controlled, managed, supported, enabled, and/or benefitted from Terminix USVI's business operations, Terminix USVI's actions are imputed to Terminix and ServiceMaster.

110.    Defendants' illegal use of methyl bromide and contamination of several Sirenusa villas directly and proximately caused a decline in the number of tourists and vacationers interested in visiting Sirenusa.

111.    Defendants' actions have unreasonably interfered with Plaintiffs' interests in using and enjoying their properties to obtain tourists and other patrons for their businesses engaged in, among other things, brokering, leasing, and selling Sirenusa villas.

112.    Defendants' contamination constitutes a private nuisance that has caused and will continue to cause significant economic losses to Plaintiffs, including but are not limited to losses attributable to: diminished property values; reservation deposit refunds and cancellations; service contract cancellations; loss of future business opportunities, including long and short-term leases; and loss and delay of the returns on their investment in acquiring villas at Sirenusa, including the carrying costs associated with Plaintiffs' investment capital and the decline of villa sales.

113.    Defendants' had actual or constructive knowledge that their use of methyl bromide was illegal and that its use in residential structures was forbidden.

114.     Defendants acted in an intentional and unreasonable, and/or negligent, grossly negligent, reckless, willful, and wanton manner.

115.     Defendants by their intentional, conscious and/or deliberate, unreasonable and illegal acts, displayed negligence, gross negligence, reckless indifference, willfulness, and/or wantonness in creating the private nuisance described herein.

116.     Alternatively, the private nuisance described herein is the result of abnormally dangerous activities carried out by Defendants.

117.     Plaintiffs are entitled to judgment in their favor finding Defendants jointly and severally liable to Plaintiffs for their damages sustained as a direct and proximate result of the private nuisance and awarding Plaintiffs adequate compensation in an amount to be determined by a trier of fact, including actual and special damages.

## NOTICE OF ALLEGATIONS OF PUNITIVE DAMAGES

118.     Plaintiffs incorporate by reference and re-allege all preceding paragraphs as if fully set forth herein, and further state:

119.     Defendants are liable for punitive damages for their willful, reckless disregard of the rights of others, to unjustly and unlawfully enrich themselves at the expense and well-being of Virgin Islanders and those who wish to visit the Virgin Islands.

120.     Defendants' unlawful, misleading, and deceptive business practices for the purpose of economic gain at the expense of others is reckless conduct that constitutes malice and fraud and evinces a conscious or reckless indifference to the rights and safety of others, including Plaintiffs and their clientele, which warrants the imposition of punitive damages against Defendants.

121.     For the sake of example and by way of punishing Defendants, Plaintiffs seek the imposition of punitive damages according to proof.

*Catalus Capital USVI, LLC, et al. v. The Terminix International Co., LP, et al.*
*Case No. 3:17-cv-00017-CVG-RM*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, as follows:

A.      That Defendants are liable to Plaintiffs on all counts stated herein;

B.      That actual, special, and compensatory damages be awarded in an amount to be determined at trial;

C.      That an award on Counts I and II be issued:

a. trebling the amount of Plaintiffs' actual damages sustained as a direct and proximate result of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), pursuant to 18 U.S.C. § 1964(c);

D.      That punitive damages be awarded in an amount sufficient to punish the Defendants for their conduct;

E.      That pre-judgment and post-judgment interest be awarded at the maximum rate allowable by law;

F.      That Plaintiffs be awarded attorney's fees under Counts I, II and III;

G.      That Plaintiffs be awarded their costs of litigation; and

H.      That Plaintiffs be awarded such other and further relief available under all applicable territorial laws and any relief the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand trial by jury on all issues so triable.

Dated this 16th day of March, 2018.


**DUANE MORRIS LLP**

*Counsel for Plaintiffs*
200 S. Biscayne Boulevard
Suite 3400
Miami, Florida 33131


*s/ Miles L. Plaskett*
Miles L. Plaskett, Esquire
Virgin Islands Bar No.:  129
Telephone: (305) 960-2243
Facsimile: (305) 397-1921
E-mail: mlplaskett@duanemorris.com


*Of Counsel*

Harvey W. Gurland, Jr., P.A.
(*Admitted pro hac vice*)
Florida Bar No.:  284033
E-mail:  hwgurland@duanemorris.com


Julian A. Jackson-Fannin, Esquire
(*Admitted pro hac vice*)
Florida Bar No.: 093220
E-mail: jjfannin@duanemorris.com

*Catalus Capital USVI, LLC, et al. v. The Terminix International Co., LP, et al.*
*Case No. 3:17-cv-00017-CVG-RM*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 16, 2018, a true and correct copy of the foregoing was sent electronically to all counsel listed in the service list below via the Court's CM/ECF system.

/s/ Miles L. Plaskett
Miles L. Plaskett, Esquire
Virgin Islands Bar No.:  129

/s/ Harvey W. Gurland, Jr.
Harvey W. Gurland, Jr., Esquire
(Admitted *pro hac vice*)

/s/ Julian A. Jackson-Fannin
Julian A. Jackson-Fannin, Esquire
(Admitted *pro hac vice*)

## Service List

**Kevin A. Rames, Esq.**
Law Offices of K.A. Rames, P.C.
2111 Company Street, Suite 3
Christiansted, VI   00820
Tel: (340) 773-7284
Fax: (340) 773-7282
kevin.rames@rameslaw.com

**David R. Creagh, Esq.**
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
Tel: (312) 704-3566
dcreagh@hinshawlaw.com
*Counsel for Defendants*

DM1\8553137.1